**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

| | |
|---|---|
| **UNITED STATES OF AMERICA**, | Case No. 3:98-cr-0208-SI-22 |
| v. | **OPINION AND ORDER** |
| **ADOLPH SPEARS, SR.**, | |
| Defendant. | |

**Michael H. Simon, District Judge.**

Defendant Adolph Spears, Sr. ("Spears") brings a motion to reduce his sentence under 18 U.S.C. § 3582(c)(1)(A). Spears' motion is based on the First Step Act of 2018 ("First Step Act"), which was signed into law on December 21, 2018. Pub. L. No. 115-391, 132 Stat. 5194 (2018). The First Step Act amended the procedure for requesting sentence modifications based on extraordinary and compelling reasons, commonly referred to as "compassionate release." The First Step Act allows prisoners to petition the Court for such relief, when before only the Bureau of Prisons ("BOP") could move for compassionate release.

Spears requests modification of his sentence to time served or to probation with or without a condition of home confinement. Spears asserts that he qualifies for compassionate

PAGE 1 – OPINION AND ORDER

release because he is 76 years old, suffers from a terminal or otherwise serious medical condition, suffers from deteriorating physical health because of the aging process that substantially diminishes his ability to provide self-care within the environment of a correctional facility, has served well more than the required 10 years of his sentence, and has family members willing to house and support him.

The government responds that Spears filed his motion before the BOP was given the statutory 30-day period to respond to Spears' request for compassionate release and that the Court should stay consideration of the motion until the 30-day period has expired. The government also responds on the merits, arguing that the medical records are not clear with respect to Spears' alleged terminal or serious health problems and that although he may well suffer from deteriorating physical health problems and otherwise qualify for compassionate release, his past record shows that he is a danger to the community and thus the Court should deny the motion. For the reasons discussed below, Spears' motion is GRANTED.

**BACKGROUND**

On December 7, 2000, a jury found Spears guilty of conspiracy to possess with intent to distribute cocaine base, conspiracy to launder monetary instruments, possession with intent to distribute cocaine, and money laundering. On May 7, 2001, then-U.S. District Court Judge Ancer Haggerty (now retired) sentenced Spears to life imprisonment on Count 1 and 240 months' imprisonment on Counts 2, 8, 9, 45, and 47, to be served concurrently, followed by a ten-year term of supervised release. ECF 1789. Spears spent 28 months in custody before sentencing, and thus has served 20 years and nine months of imprisonment.

Spears is now 76 years and eight months old. Because of his medical problems, in May 2019 he was moved from FCI Sheridan to BOP's Butner Medical Facility in North

Carolina. His current medical condition is explained by one of his medical experts, Dr. Jill Ginsberg, as follows:

> In summary, Mr. Spears is a 76 year old man with multiple chronic serious medical conditions and limited life expectancy. Most recently, he was diagnosed with a high grade prostate cancer in June of 2018. His prostate cancer was determined to have a Gleason score of 5+4/9, meaning that most of the abnormal cancer cells were poorly differentiated. This indicates an aggressive form of cancer with a high risk for progression and metastasis. He also suffers from poorly controlled diabetes, cataracts, diabetic eye disease, chronic pain following spine surgery for disc disease in his neck and back, limited mobility with dependence on a wheelchair, removal of his right kidney in 2016 following a diagnosis of renal cell carcinoma, chronic kidney disease affecting his remaining kidney, and MGUS (monoclonal gammopathy of uncertain significance), which carries a risk of progression to multiple myeloma (bone marrow cancer).

ECF 2595-1 at 1. Spears' other medical expert, Dr. Daniel J. Roberts, provides a discussion of Spears medical conditions and concludes: "His metastatic prostate cancer, combined with his poor baseline functional status and other aforementioned medical problems, is consistent with a terminal illness with a grim prognosis." ECF 2595-1 at 6. Spears also has problems swallowing, and underwent an "MBSS," an objective swallow study, in August 2019. His chart note from August 27, 2019, discussed his need for "pharyngeal exercises," his compensatory mechanism of tilting his head to the left and chewing 15 times in order to swallow, his therapy treatment of "thermal stimulation to improve swallow initiation with puree," and that he was "able to swallow pudding x6 without rocking bolus back and forth in his mouth before swallowing." Spears also suffers from esophageal reflux.

Spears' daughters Nicola Spears, Deedra Spears-Young, and Dana Spears-Talbert, his daughter-in-law Dana Hodge-Spears, and his granddaughters Amber Ford, Danatria Spears, and Danayshea Winters have all offered to house Spears if he is released and to provide him

additional support as needed. Several other family members and friends have offered to assist in Spears' self-care, transportation, spiritual, and medical needs.

Spears submitted a request to the BOP on September 13, 2019, the same day he filed his motion with the Court, requesting that the BOP seek compassionate release. On September 30, 2019, the BOP summarily denied Spears' request and noted that he could appeal the denial or wait until 30 days after the date of submission of Spears' request (*i.e.*, October 13, 2019) to file a motion with the Court.

## STANDARDS

Section 3582(c)(1)(A) provides that a court may reduce the sentence of an inmate upon the motion of the BOP or the inmate "after considering the factors set forth in section 3553(a) to the extent that they are applicable," if the court finds that:

> (i) extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the BOP that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

The Policy Statement issued by the United States Sentencing Commission, § 1.B.1.13 of the U.S. Sentencing Guidelines, ("Policy Statement"), was last amended in November 2018 before the First Step Act was passed. The Policy Statement takes the requirement in subsection (ii) that the defendant is not a danger to the safety of any other person or the community and applies it as an independent factor applicable to both circumstances in

PAGE 4 – OPINION AND ORDER

subsections (i) and (ii), even though that is not how the statute is written. U.S.S.G. § 1.B.1.13. Thus, the Policy Statement adds this requirement to compassionate release based on extraordinary and compelling reasons. The Policy Statement also describes the following ways in which "extraordinary and compelling" circumstances may arise:

(A) medical reasons, including (i) the defendant is suffering from a terminal illness, (ii) the defendant is suffering from a (I) serious physical or medical condition, (II) functional or cognitive impairment, or (III) deteriorating physical or mental health from the aging process, any of which "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover";

(B) the defendant is at least 65 years old, "experiencing a serious deterioration in physical or mental health because of the aging process," and has served at least 10 years or 75 percent of his or her sentence, whichever is less;

(C) family circumstances that do not apply in this case; or

(D) an extraordinary and compelling reason other than or in combination with one of the enumerated reasons. *Id.* n.1.

The Policy Statement further notes that "[t]he court is in a unique position to determine whether the circumstances warrant a reduction (and, if so, the amount of reduction)." *Id.* n.4.

Some courts have held that the current Policy Statement is not binding on courts with respect to a compassionate release motion by a prisoner made after the First Step Act, because the Policy Statement only applies to motions filed by the BOP. *See, e.g.*, *United States v. Beck*, 2019 WL 2716505, at *5 (M.D.N.C. June 28, 2019) ("There is no policy statement applicable to motions for compassionate release filed by defendants under the First Step Act. By its terms, the old policy statement applies to motions for compassionate release filed by the BOP

Director and makes no mention of motions filed by defendants."); *United States v. Cantu*, 2019 WL 2498923, at *3 (S.D. Tex. June 17, 2019) (finding that the Policy Statement is not binding on the court because Congress overrode the statement in passing the First Step Act). Other courts are still guided by the Policy Statement when evaluating whether extraordinary and compelling circumstances exist. *See United States v. York*, 2019 WL 3241166 (E.D. Tenn. July 18, 2019) ("While this particular policy statement has not yet been updated to reflect that defendants (and not just the BOP) may move for compassionate release, courts have universally turned to U.S.S.G § 1B1.13 to provide guidance on the 'extraordinary and compelling reasons that may justify a sentence reduction.'"). The Court need not decide the issue, however, because reducing Spears' sentence is consistent with the Policy Statement.

## DISCUSSION

### A. Timing of Motion

The First Step Act amendments provide that a defendant may directly move a court for compassionate release "after the defendant has fully exhausted all administrative rights to appeal a failure of the BOP to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). This is to allow the BOP time to consider and act upon requests before necessitating court intervention. Spears presented his request to the BOP on September 13, 2019. Thus, the 30-day period expired October 13, 2019. The Court waited until October 15, 2019, the first business day after October 13, 2019, to consider Spears' motion. The Court also provided the government with the opportunity to supplement its response to include the response by the BOP.[1] Accordingly, the Court stayed consideration of Spears' motion until after the expiration of

---

[1] On October 10, 2019, the government filed the response by the BOP.

the 30-day period. *See, e.g.*, *United States v. Robinson*, 2019 WL 2567356, at *2 (W.D. Wash. June 21, 2019) (staying consideration of a compassionate release motion for exactly the 30-day period). The motion is now ripe for review on the merits.

**B. Extraordinary and Compelling Reasons**

The Court has reviewed the medical records submitted in this case. Spears is nearly 77 years old and has served more than 20 years of imprisonment. His serious, possibly terminal, health problems meet the Policy Statement's categories of a serious medical or physical condition and a serious deterioration in physical health because of the aging process. He is not expected to recover from his serious and chronic medical conditions. His medical problems also substantially diminish his ability to provide self-care within the environment of a correctional facility. Accordingly, he meets the requirements of the Policy Statement's categories of extraordinary and compelling reasons A(ii)(I), A(ii)(III), and B.[2] *See, e.g.*, *United States v. Bellamy*, 2019 WL 3340699, at *4 (D. Minn. July 25, 2019) (finding that similar medical conditions, although with the major condition of heart disease instead of cancer, meet the criteria, and specifically finding: "Bellamy's medical conditions meet the criteria for extraordinary and compelling reasons set forth in both the [Policy] Statement and the BOP Statement. Bellamy has several serious chronic illnesses, is experiencing deteriorating health as a result of the aging process, is capable of only limited self-care, and is confined to his bed or wheelchair more than 50% of his waking hours. He is not expected to recover from most of his serious health problems, and his health problems substantially diminish his ability to provide self-care within a correctional facility.").

---

[2] It does not appear that the BOP considered whether Spears met these criteria. The denial by the BOP only noted that Spears failed to meet the requirement under A(i) for terminal illness, but made no mention of the other categories for compassionate release.

PAGE 7 – OPINION AND ORDER

## C. Danger to the Community

The Policy Statement provides that compassionate release is only appropriate when "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." That statute directs a court to consider: (1) the nature and circumstances of the offense charged, including whether it is a crime of violence or involves a controlled substance; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including character, physical and mental condition, family ties, employment, financial resources, community ties, past conduct, criminal history, and drug and alcohol abuse; and (4) the nature and seriousness of the danger to any person or the community that release would pose.

The Court has received numerous letters from family and community members pledging housing or emotional, financial, or physical support to Spears if he is released. Spears proposed a release plan, which included seven different housing options, although his preferred option was with his daughter, Dana Spears-Talbert. The Court requested that the U.S. Probation Office inspect the potential residences. On October 11, 2019, the U.S. Probation Office for the District of Oregon approved the residence of Spears' daughter, Dana Spears-Talbert, in Portland, Oregon. Ms. Spears-Talbot has experience as a caregiver to a parent with medical needs, having taken care of her mother during the final years of her life. Ms. Spears-Talbert also has more than 20 years of experience working in a non-profit organization, working with youth and family and with adults and seniors with disabilities. She is also located near other family members who have stated that they will help Spears as needed. Accordingly, Spears has an approved and well-situated location in which he may reside upon release. Additionally, as discussed above, Spears has significant medical problems and is confined to a wheelchair or uses a walker.

The government argues that Spears is a danger because the crime of conviction was a large drug conspiracy, he possessed guns during the drug conspiracy, he was arrested in 1960 for manslaughter (he was not convicted, and it is unclear if he was even tried for this crime), he was convicted in 1965 of resisting arrest and disorderly conduct, he was investigated in 1978 for tax evasion and offered a man $500 to burn down an IRS agent's house in the evening when the agent would likely be home and was then convicted of conspiracy to commit murder, for which he was sentenced to 25 years, he was convicted in 1990 (after being released early from the sentence for the murder conspiracy conviction) of possession of a controlled substance, and after he was released he became part of the underlying drug conspiracy. The government argues that Spears' age and medical conditions do not render him "so incapacitated" that he could not resume his former criminal conduct. The government notes that when Spears was in his fifties, he was a leader of a major drug conspiracy.

The Court recognizes that the underlying offense involved controlled substances of great volume and the evidence was sufficient for the jury to convict Spears. The Court further considers Spears' past violent conduct from the 1960s and 1970s. The Court also considers, however, that Spears' most recent controlled substance conviction is more than 19 years old and his most recent conviction for a crime of violence is more than 40 years old. *See, e.g.*, *Bellamy*, 2019 WL 3340699, at *6 (considering the age of the defendant's convictions for violent and controlled substances offenses). The Court also acknowledges the significant family and community support awaiting Spears if he is released. The Court further finds that there are conditions the Court could impose to reasonably assure the safety of any other person and the community. "The Court will order an updated version of the conditions of supervised release to ensure that [Spears] does not have contact with those engaging in criminal activity and extend

the term of supervision to life." *United States v. McGraw*, 2019 WL 2059488, at *4 (S.D. Ind. May 9, 2019).

In light of the age of Spears' previous convictions, Spears' age, and Spears' physical and medical condition, the Court does not find that at this time Spears poses a significant risk to the community. *See, e.g.*, *Bellamy*, 2019 WL 3340699, at *6 ("As to the fourth factor, the Court doubts that Bellamy presents a danger to any person or the community in his present state. He is wheelchair-bound and requires assistance to complete most of his daily activities. The age of his prior violent and controlled substance offenses combined with Bellamy's current physical condition leads the Court to conclude that he presents little risk of danger to any person or the community. Any limited risk can be mitigated by supervision." (quotation marks and alterations omitted)); *United States v. York*, 2019 WL 3241166, at *7 (E.D. Tenn. July 18, 2019) ("Given Defendant's age and physical impairments, the Court is disinclined to find that Defendant poses any significant risk to the community at this time.); *McGraw*, 2019 WL 2059488, at *4 ("The seriousness of Mr. McGraw's offense and criminal history are wholly outweighed by Mr. McGraw's serious, deteriorating conditions and dependence upon oxygen and a wheelchair."). In addition, appropriate supervision conditions can mitigate any limited risk.

**D. Section 3553(a) Factors**

The government does not argue that any § 3553(a) factors do not support sentence modification. Many of the factors have already been discussed in this Opinion and Order. The Court notes that Spears' conduct in this case and in the past was very serious. He has been in custody, however, for more than 20 years, which is a significant sanction. The Court will also order lifetime supervision, which continues to serve both as a sanction and a general deterrent. As explained by the Court in *McGraw* under similar circumstances:

> But further incarceration is not needed to deter [the defendant] from further offenses; nor, for the reasons described above, is it necessary to protect the public from future crimes. Finally, [the defendant] has served much of his sentence while seriously ill and in physical discomfort. This means that his sentence has been significantly more laborious than that served by most inmates. It also means that further incarceration in his condition would be greater than necessary to serve the purposes of punishment set forth in § 3553(a)(2).

2019 WL 2059488, at *5.

In comparing Spears' potentially reduced sentence with sentences imposed for similar offenses, the Court notes that Spears was convicted and sentenced to life in prison for a conspiracy involving distribution of crack cocaine at a time when sentences for drug offenses involving crack cocaine were much higher than sentences imposed for cocaine and certain other drugs. Since then, Congress changed some of this disparity in the Fair Sentencing Act of 2010 and the First Step Act. Further, Spears was sentenced at a time when the Sentencing Guidelines were considered mandatory, and the sentencing judge specifically noted that he had "no discretion, as I see it, to avoid imposing a life sentence." ECF 1829-1 at 31. It is unlikely that Spears would be sentenced to life in prison today if he was convicted of the same crime. The Court does not find that reducing his sentence would create "unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). Although the Court does not find that a sentence reduction would create a disparity, any possible disparity resulting from a reduced sentence is not unwarranted given the special circumstances that Spears currently faces in prison as a result of his health and age. Any disparity also will be mitigated by imposing a lifetime period of supervised release. Reducing Spears' sentence to time served is sufficient, but not greater than necessary, to accomplish the sentencing purposes set forth in § 3553(a)(2).

## CONCLUSION

Pursuant to 18 U.S.C. § 3582(c), the Court finds that extraordinary and compelling reasons warrant a reduction of Spears' sentence, Spears does not pose a danger to any other person or the community under the conditions of release, the § 3553(a) factors support a reduction, and the reduction is consistent with the Sentencing Commission's Policy Statement. Accordingly, Defendant's Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A) as Amended by the First Step Act of 2018 (ECF No. 2776) is GRANTED.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, IT IS HEREBY ORDERED that:

1. Defendant's Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A) as Amended by the First Step Act of 2018 (ECF No. 2776) is GRANTED;

2. Defendant's sentence of imprisonment is reduced to time served, effective October 15, 2019, and the BOP shall immediately release Defendant for placement with his daughter Dana Spears-Talbert in Portland, Oregon;

3. Defendant's term of supervised release shall begin upon his release and shall continue for the remainder of his life;

4. Defendant is responsible for arranging his own transportation to his joint residence with Dana Spears-Talbert;

5. Defendant shall report in person to the U.S. Probation Office in the District of Oregon within 96 hours (4 days) of his release;

6. Defendant shall not meet, communicate, or otherwise interact with a person he knows to be engaged, or planning to be engaged, in criminal activity. Defendant shall report any

contact with persons he knows to be convicted felons to his probation officer within 72 hours of any such contact; and

7. Defendant's remaining conditions of supervised release, as described in the Sentencing Judgment (ECF 1789 at 3), shall remain unchanged.

**IT IS SO ORDERED.**

DATED this 15th day of October, 2019.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge